FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 19, 2017

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

ELIZABETH PARKER,

               Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

No.   2:16-CV-0087-SMJ

**ORDER GRANTING PLAINTIFF'S SUMMARY JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY JUDGMENT MOTION, AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

## I.    INTRODUCTION

Before the Court, without oral argument, are the parties' cross-motions for summary judgment. ECF Nos. 15 & 20. Plaintiff Elizabeth Parker appeals the Administrative Law Judge's (ALJ) denial of Social Security disability insurance and supplemental security income benefits. ECF No. 1. Plaintiff contends the ALJ erred by disregarding medical opinions, discrediting her testimony, and failing to subpoena witnesses. Plaintiff also argues the ALJ displayed an impermissible bias against her based on her mental health and indigent status. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision.

SUMMARY JUDGMENT
ORDER **-** 1

After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court finds that the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence to reject the medical opinion of Dr. Sanchez and the Veterans Affairs (VA) disability rating. Further, the Court cannot find that these were harmless errors. Accordingly, the Court denies both motions and remands the case for reconsideration consistent with this Order.

## II.    BACKGROUND[1]

At the time of her hearing before the ALJ, Plaintiff was fifty-five years old and lived in Seattle. ECF No. 8-2 at 45, 49. Plaintiff suffers from a number of conditions including major depressive disorder, anxiety related disorders, and post traumatic stress disorder (PTSD). *Id.* at 19. Plaintiff is a veteran of the United States Army and has a degree in journalism from Western Washington University and a paralegal certificate from Edmonds Community College. *Id.* at 45–46. She has not worked since 2011. *Id.* at 46.

Plaintiff filed applications for disability benefits and supplemental security income on October 10, 2012, alleging that her psychological symptoms became disabling beginning August 28, 2012. *Id.* at 15. The claims were denied on March

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

5, 2013, and on reconsideration on May 14, 2013. *Id.* Plaintiff filed a request for hearing on June 17, 2013, and a hearing before ALJ Larry Kennedy was held February 3, 2014. *Id.*

The ALJ issued his decision on April 2, 2014, concluding that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. *Id.* at 12. Plaintiff requested review by the Social Security Appeals Counsel. *Id.* at 10. The Appeals Counsel denied Plaintiff's request for review of the ALJ's decision on January 28, 2016. *Id.* at 2.

Plaintiff filed this action on March 24, 2016. ECF No. 1.

## III.   DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his or her previous work, the claimant is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show (1) the claimant can perform other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## IV.    STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir.1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11 (citation

omitted). Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

## V. DISCUSSION

The ALJ found that (1) Plaintiff has not engaged in substantial gainful activity since August 28, 2012; (2) Plaintiff has the following severe impairments: major depressive disorder and anxiety related disorders/PTSD; (3) Plaintiff's impairments did not meet or medically equal the severity of any impairment listed by the Commissioner as so severe as to preclude substantial gainful activity; (4) Plaintiff has the residual functional capacity to perform work at all exertional capacity with certain nonexertional limitations; and (5) Plaintiff is capable of performing many jobs available in the national economy. ECF No. 8-2 at 19–32.

Plaintiff challenges only the ALJ's decision at step four that Plaintiff has the residual functional capacity (RFC) to work at all exertional levels with certain nonexertional limitations. Specifically, Plaintiff poses the following questions for review:

1.    Did the ALJ commit reversible error by disregarding the opinions of Plaintiff's treating and examining physicians?

2.    Did the ALJ commit reversible error by disregarding Plaintiff's VA disability rating?

3. Did the ALJ commit reversible error by dismissing Plaintiff's complaints as not credible?

4. Was the ALJ's refusal to subpoena Plaintiff's experts an abuse of discretion?

5. Did the ALJ display impermissible bias against Plaintiff?

**A. The ALJ failed to provide specific and legitimate reasons to reject the medical opinions of Drs. Sanchez and Levitt.**

Plaintiff contends that the ALJ improperly rejected the opinions of Doctors Sanchez and Levitt as well as the Global Assessment Functioning (GAF) scores assigned by various treating and examining physicians. These medical opinions are conflicted by the State evaluations conducted by Drs. Comrie and Reade. When a treating or examining doctor's opinion is contradicted by the opinion of another doctor, the ALJ may reject the treating doctor's opinion if the ALJ cites "specific and legitimate reasons" that are supported by substantial evidence in the record. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir.2014). "When evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if it is brief, conclusory, or inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

**1. The ALJ failed to provide specific legitimate reasons supported by substantial evidence to reject Dr. Sanchez's medical opinion.**

Plaintiff argues that the ALJ erred by giving little to no weight to the opinion

of Doctor Sanchez, a psychologist employed by the Department of Health and Social Services (DSHS). Dr. Sanchez conducted a psychological evaluation of Plaintiff in October of 2012. ECF No. 8-7 at 2–6. Dr. Sanchez opined that Plaintiff suffered from marked PTSD and found a range of limitations from none to marked in her cognitive abilities. *Id.* Dr. Sanchez concluded that Plaintiff would have limitations performing work activities within a schedule, maintaining regular attendance at work, and completing a normal workday/week without interruptions from psychologically based symptoms. *Id.* at 4.

The ALJ gave three reasons for assigning little to no weight to Dr. Sanchez's opinion. ECF No. 8-2 at 27. First, the ALJ noted that the medical history was based on the claimant's self-reporting and not an independent review of the medical evidence in the record. Second, the mini-mental status examination revealed that Plaintiff was within normal limits except for her concentration with a score of 28/30. Third, the ALJ found Dr. Sanchez's description of "marked" PTSD was "beyond the diagnoses descriptions in DSM IV and inconsistent with [Plaintiff's] activities of daily living." ECF no. 8-2 at 28.

Substantial evidence does not support the ALJ's finding that Dr. Sanchez's opinion should be discounted because she relied upon Plaintiff's subjective complaints. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."

*Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). The record shows that Dr. Sanchez conducted a mental status examination and clinical interview. ECF No. 8-7 at 2–6. Dr. Sanchez provided a medical opinion based on her observations during the clinical interview, the objective results of Plaintiff's mental status examinations and Plaintiff's self-reported symptoms. The ALJ's decision discounting Dr. Sanchez's assessment to the extent it was based on Plaintiff's subjective complaints is therefore not supported by substantial evidence.

The ALJ also rejected Dr. Sanchez's opinion because he found that Dr. Sanchez's assessment of Plaintiff's symptoms was inconsistent with the mental-status examination. Specifically, the ALJ noted that the mental status examination was "within limits" on all categories except for concentration. ECF No. 8-2 at 28. A discrepancy in the clinical record is a specific and legitimate reason to discount Dr. Sanchez's opinion regarding Plaintiff's mental status limitations. *See Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005) (ALJ properly rejected doctor's statement that claimant could stand or walk for only fifteen minutes when clinical notes taken that same day contradicted that statement). Here, the mini-mental status test revealed few problems and Plaintiff scored a 28/30. However, the mental status examination is only one factor in Dr. Sanchez's assessment. Dr. Sanchez also reviewed Plaintiff's social worker notes and conducted a clinical interview with Plaintiff. During this interview, Plaintiff revealed that she suffered sexual trauma

and abuse, she has been hospitalized twice for suicidal ideation, and that she has struggled to maintain steady employment despite her higher education. ECF No. 8-7 at 4. These reports are corroborated in the record. Accordingly, to the extent the ALJ rejected Dr. Sanchez's opinion because it conflicted with the clinical evidence, the ALJ's determination is not supported by substantial evidence.

The ALJ also rejected Dr. Sanchez's opinion because the "description of 'marked' posttraumatic stress disorder and depression [is] beyond the diagnoses descriptions in DSM IV and inconsistent with her activities of daily living." ECF No. 8-2 at 28. These reasons also are not supported by substantial evidence. It is true that the DSM-IV does not provide for a specification of "marked" PTSD. However, the DSM-IV does not preclude a provider from noting the severity of a condition, and the evaluation form Dr. Sanchez completed does not require strict adherence to DSM-IV terms. *See* ECF No. 8-7 at 3 (section E of the form directs providers to list the DSM-IV code as well as how it is supported by clinical evidence). Accordingly, the ALJ erred to the extent that he dismissed Dr. Sanchez's opinion based on the supposed discrepancy with the DSM-IV.

The ALJ's finding that a diagnosis of PTSD is inconsistent with Plaintiff's activities of daily living is also not supported by substantial evidence. Persistent symptoms of PTSD include difficulty concentrating and irritability and outbursts of anger. *The Diagnostic and Statistical Manual of Mental Disorders*, § 309.81 (Am.

Psychiatric Ass'n 4th ed.) (1994). These are consistent with Plaintiff's behavior and reported feelings described in the record. Symptoms associated with the avoidance of stimuli associated with the trauma include a restricted range of affect, feelings of detachment, and diminished participation in significant activities. *Id.* These, too, are supported in the record. The ALJ has failed to specify how making and selling jewelry specifically contradicts Plaintiff's individual symptoms. The ALJ's determination that Plaintiff's activities of daily living are inconsistent with her PTSD diagnosis is therefore unsupported by evidence in the record.

Finally, the ALJ appears to discount Dr. Sanchez's opinion because Plaintiff did not disclose her marijuana use. An ALJ may consider inconsistent statements about a claimant's drug use to discount credibility. *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). However, the ALJ does not explain why Plaintiff's marijuana use undermines Dr. Sanchez's opinion regarding Plaintiff's mental impairments, and Defendant does not attempt to illuminate this comment in its brief. Accordingly, the Court finds this is not a specific and legitimate reason to discredit Dr. Sanchez's opinion.

The Court also concludes that the error in evaluating Dr. Sanchez's opinion is not harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2011) ("[H]armless error principles apply in the Social Security Act context."). ALJ errors

are harmless only if they are "inconsequential to the ultimate nondisability determination" such that the reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). Here, because the ALJ improperly disregarded the opinion of Dr. Sanchez in forming the RFC and Plaintiff was found capable of performing work at all exertional levels with certain nonexertional limitations based on that RFC, the error affected the ultimate disability determination and is not harmless.

### 2. The ALJ's finding that Dr. Levitt's opinion is contradicted by the record is a specific legitimate reason to reduce the weight given to the opinion, but it is not sufficient to reject the evidence entirely.

Plaintiff argues that the ALJ improperly rejected Dr. Levitt's assessment and opinion that Plaintiff was unable to work due to her disabilities. Dr. Levitt submitted a letter stating that he had treated Plaintiff for over two years and follows up with her regarding various mood disorders and symptoms. ECF No. 8-9 at 135. Based on his experience with Plaintiff, Dr. Levitt believed Plaintiff would experience marked to severe limitation in future employment efforts. The ALJ provided three reasons for rejecting Dr. Levitt's opinion. ECF No. 8-2 at 28. First, the ALJ reasoned that Dr. Levitt's opinion is not credible "because Dr. Levitt is a resident, as a 'women's health provider.'" *Id.* Second, the ALJ stated record does not indicate

that Dr. Levitt has directly treated Plaintiff for mental health symptoms. Finally, the ALJ noted that Dr. Levitt did not refer to Plaintiff's marijuana use, jewelry selling or the fact that he referred Plaintiff to a compensated work therapy program.

20 C.F.R. § 404.1527(c) sets out the basis for assigning weight to medical opinions. ALJs are to examine the relationship between the claimant and the source of the medical opinion, assigning greater weight to treating physicians than examining physicians. ALJ's also consider the treating relationship, including the nature and length of the relationship. Support for the opinion based on evidence in the medical records, consistency of the opinion with the record as a whole, and the specialty of the provider are also considerations ALJs should account for when assigning weight to a medical opinion. Finally, 20 C.F.R. § 404.1527(c)(6) provides that ALJs can consider any other information which tends to support or contradict the medical opinion.

The ALJ's first reason for rejecting Dr. Levitt's opinion is unsupported by substantial evidence in the record. The record shows that Dr. Levitt was one of Plaintiff's treating physicians. He examined and treated her on numerous occasions for over two years. *See, e.g.*, ECF Nos. 8-8 at 2, 169; 8-9 at 27, 36. The Court notes that the fact that Dr. Levitt is a resident in the women's health clinic does not necessarily mean that his practice is limited to the female anatomy. The transcripts from the hearing appear to indicate the ALJ believed Dr. Levitt was the equivalent

of an OB/GYN,[2] but this is not the case. The record shows that the medical staff in the VA Women's Clinic operated a general practice. Specifically, several instances in the record indicate Plaintiff's discussion of her mood and prescriptions for antidepressants with providers housed in the Women's Clinic. *See, e.g.*, ECF No. 8-9 at 65–67 (discusses taking citalopram with Dr. Levitt); *id.* at 100–01 (discussing possible medication change with Women's Clinic physician Maryann Overland); ECF No. 8-8 at 82–83 (discussing increasing citalopram dosage with Women's Clinic resident Michael Lenaeus).

The fact that Dr. Levitt has not performed a mental status examination on Plaintiff is a specific, legitimate reason to reduce the weight given to Dr. Levitt's opinion. However, it does not support discrediting his opinion entirely. When evaluating the weight to give a medical opinion, an ALJ may "look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." 20 C.F.R. § 404.1527(c). Here, the record indicates that Dr. Levitt has a reasonable knowledge of Plaintiff's psychological symptoms. The physician team at the VA

---

[2] ALJ: "And then Dr. Levitt, what does he—is he in the Women's Health Side?" Plaintiff: "Yes." ALJ: "Ok. Is he—for physical health?" Plaintiff: "They work as a team there." ALJ: "Like OBY—OB-GYN?" Plaintiff: "So they work as a team. So they, they talk to each other through emails." ALJ: "Well, what is his specialty?" Plaintiff: "He is, he's a resident so I'm not sure what his specialty is, but he does work in the Women's Clinic there, and I guess it would be general practice." ECF No. 8-2 at 54.

communicated regularly across departments regarding Plaintiff's treatment and care. As the ALJ also acknowledged, the team at the VA worked collaboratively, and Dr. Levitt had access to Plaintiff's entire record. ECF No. 8-2 at 28. Accordingly, the record does not support rejecting Dr. Levitt's opinion based on the treatment relationship alone.

Dr. Levitt's referral of Plaintiff to a compensated work therapy (CWT) program at the VA is likewise insufficient to discredit his opinion. The ALJ concluded that Dr. Levitt's referral of Plaintiff to the CWT was not consistent with a finding that she is totally disabled, however this is not supported by substantial evidence in the record. Dr. Levitt wrote to SSA on January 30, 2014, considerably after he first referred Plaintiff to the CWT program. The record shows that multiple VA counselors and providers noted Plaintiff struggled with the CWT program. *See* ECF No. 8-8 at 98; ECF No. 8-9 at 72 (noting Plaintiff quit the CWT program due to overwhelming anxiety).

Finally, the ALJ noted that Dr. Levitt "did not discuss [Plaintiff's] jewelry business" and "did not mention [Plaintiff's] marijuana use." ECF No. 8-2 at 28. The Court interprets this as a finding that Dr. Levitt's opinion was inconsistent with the record. Unlike the other reasons proffered by the ALJ, this is a specific legitimate reason to reject a medical opinion. Dr. Levitt's letter contained a description of her diagnoses and how those diagnoses and symptoms impacted Plaintiff's ability to

maintain employment. Dr. Levitt concluded the letter by stating that he did not believe Plaintiff could work at this time. The potentially conflicting instances in the record cited by the ALJ support rejecting the final statement in Dr. Levitt's letter. However, the ALJ has failed to explain why these support rejecting Dr. Levitt's medical opinion in its entirety. As one of Plaintiff's treating physicians, Dr. Levitt's opinion should normally be accorded great weight. Accordingly, the ALJ's proffered reasons for finding Dr. Levitt's opinion conflicts with the record is insufficient to reject his medical opinion in its entirety.

The Court cannot conclude that the ALJ's error was harmless and therefore instructs the ALJ to reconsider this evidence on remand.

### 3. The ALJ gave specific legitimate reasons for rejecting the GAF scores.

Finally, Plaintiff argues that the ALJ erred by rejecting the Global Assessment Functioning (GAF) scores in the record. ECF No. 15 at 13–14. The GAF is a numeric scale used by mental health clinicians to subjectively assess an individual's overall functioning level. Like other medical opinions, GAF scores are relevant evidence that should be considered and can only be rejected for specific reasons.

Here, the ALJ stated two reasons for rejecting the GAF scores. The first amounted to a boilerplate recitation of what GAF scores are and why, as a matter of course, they are not particularly probative of disability. ECF no. 8-2 at 27. This

opinion is at odds with SSA regulations. A GAF score that is assigned by an acceptable medical source is a medical opinion as defined in 20 C.F.R. §§ 404.1527(a)(2) and 516.927(a)(2).

However, the ALJ also noted that the GAF scores were inconsistent with the record as a whole. ECF no. 8-2 at 27. The record contains GAF scores of 45, ECF No. 8-8 at 115, 49, ECF No. 8-7 at 2, and 50, ECF No. 8-8 at 155. Scores in this range indicate serious symptoms or serious impairment in social, occupational or school functioning. The ALJ found that these scores did not comport with his findings that Plaintiff was able to complete her activities of daily living with few limitations. ECF no. 8-2 at 27. Although the record in this case is voluminous, the ALJ evaluated and weighed the evidence. The ALJ's conclusion is supported by substantial evidence.

**B. The ALJ failed to give specific, persuasive grounds for rejecting Plaintiff's VA disability score.**

Plaintiff next argues that the ALJ erred by rejecting her 70% VA disability rating. Although a VA disability rating does not necessarily compel an ALJ to reach an identical result, "an ALJ must ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). An ALJ may give less weight to a VA disability rating only if he or she gives persuasive, specific, valid reasons for doing so that are supported by the record. *Id.* An ALJ may not merely rely on the "general ground that the VA and SSA disability

inquiries are different." *Valentine*, 574 F.3d at 695. Instead, the distinction must be specific to the individual case such as when the SSA has information that the VA did not. *Id.*

The ALJ here failed to give any valid persuasive reasons for refusing to afford "great weight" to the determination of the VA that Plaintiff was 70% disabled. In support of his decision, the ALJ stated only:

> [T]he Veterans Administration has not opined that the claimant was unemployable in these rating decisions. Although they provided a basis for their determination and recited GAF scores, they also did not provide provides [sic] an individualized assessment that focuses on a claimant's ability to perform work in the national economy. Thus, I give these numeric ratings little to no weight.

ECF No. 8-2 at 30.

The ALJ's stated reasons are little more than generalized critiques applied to a specific situation. The fact that the VA and SSA disability ratings differ in the disability calculation—basing the calculation on a "hypothetical person" versus the specific claimant, respectively—is merely a general differentiating feature between the two inquiries. This is also true of the fact that the VA does not account for a claimant's ability to perform work in the national economy. Neither of these grounds are specific or persuasive under *McCartey* and *Valentine*.

Again, the Court cannot conclude that this error was harmless. Like the medical opinions, the VA score could have been an important factor in

determining Plaintiff's RFC. Because the Court cannot say with certainty that no reasonable ALJ could reach a different conclusion if this evidence were considered, the Court instructs the ALJ to reconsider the VA disability rating on remand.

## C. The ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony.

Where a claimant presents objective medical evidence of impairments that could reasonably produce the symptoms complained of, an ALJ may reject the claimant's testimony about the severity of her symptoms only for "specific, clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). ALJs may consider many factors in weighing a claimant's credibility, including prior inconsistent statements, unexplained failures to seek treatment, and claimant's daily activities, among others. *Tommasetti*, 533 F.3d at 1039. Courts may not second-guess an ALJ's findings that are supported by substantial evidence. *Id.*

The ALJ provided specific instances to support his determination that Plaintiff's testimony was not credible. For example, Plaintiff failed to disclose that she was selling jewelry at markets and online. At the hearing, Plaintiff told the ALJ

that she had no other sources of income other than her VA benefits. ECF No. 8-2 at 46. However, Plaintiff told a VA vocational rehab counselor that she makes up to $600 per week selling her jewelry. ECF No. 8-8 at 79. Plaintiff was also somewhat evasive when questioned by the ALJ about her use of marijuana. ECF No. 8-2 at 52. The ALJ pointed to these instances when making his findings that Plaintiff's testimony was not credible.

The ALJ also noted that Plaintiff's testimony was inconsistent with the facts in the record. Specifically, he noted that Plaintiff had worked and looked for work during the time Plaintiff alleged she was disabled. *See Bray v. Comm'r of Soc. Sec. Admin.*, 544 F.3d 1219 (9th Cir. 2009) (upholding ALJ's findings claimant was not credible in part because she continued to work and seek employment after the alleged onset of her disability). After the alleged onset of her disability, Plaintiff continued to make and sell jewelry and to participate in the CWT program until she voluntarily withdrew.

Based on the specified inconsistencies in Plaintiff's testimony and the conflicting evidence in the record, the ALJ's decision to discredit Plaintiff's testimony regarding her symptoms is supported by substantial evidence in the record.

**D. The ALJ did not abuse his discretion in denying Plaintiff's request to subpoena non-examining physicians.**

Plaintiff next assigns error to the ALJ's refusal to subpoena Drs. Comrie and Reade, both non-examining State agency doctors. An ALJ may issue subpoenas for the appearance and testimony of witnesses when "necessary for the full presentation of a case." 20 C.F.R. § 404.950(d)(1), 416.1450(d)(1). It is an abuse of discretion to deny the claimant's request for a subpoena and, consequently, her right to cross-examine where the witness is a "crucial witness" whose findings "substantially contradict the other medical testimony." *Solis v. Schwieker*, 719 F.2d 301, 302 (9th Cir. 1983). If a party wishes to subpoena a witness, rather than conduct cross examination through interrogatories, the party must submit a statement of important facts the witness is expected to prove as well as an indication as to why these facts could not be proven without issuing a subpoena. 20 C.F.R. § 404.950(d)(2), 416.1450(d)(2).

Prior to the hearing, Plaintiff's attorney, Mr. Rutzick, submitted a written request to subpoena Drs. Comrie and Reade. Mr. Rutzick stated that he planned to question the doctors about discrepancies between their opinions and medical/other evidence of other examining medical professionals as well as their credentials. Mr. Rutzick also indicated that he "expect[ed] to ask questions inter alia touching on their bias." ECF No. 8-6 at 83. The ALJ denied this subpoena request, stating that

it did not meet the regulatory requirements to issue a subpoena under 20 C.F.R. 404.950(d)(2).

The ALJ did not abuse his discretion in denying Mr. Rutzick's petition to subpoena Drs. Comrie and Reade. The witnesses were undoubtedly crucial witnesses within the contemplation of *Solis*. However, the holding in *Solis* does not require an ALJ to issue subpoenas for every crucial witness. It requires only that claimants have the opportunity to meaningfully cross examine those witnesses. Mr. Rutzick failed to demonstrate why interrogatories would be insufficient to cross examine the doctors on their experience and factual determinations.

The Court notes that Mr. Rutzick indicated he planned to ask questions "touching on [the doctors'] bias." The *Solis* court recognized that bias is most properly elicited through cross examination. However bias is not a talismanic word triggering the ALJ's duty to subpoena a witness. Under 20 C.F.R. 404.950(d)(2), parties requesting a subpoena must specify facts they expect to establish through cross examination and explain why interrogatories are insufficient. Mr. Rutzick made no attempt to do so here. Accordingly, the ALJ's denial of the subpoena request was not an abuse of discretion.

### E. Plaintiff has failed to establish that ALJ Kennedy is biased against claimants like Plaintiff.

Finally, Plaintiff submits to the Court for review numerous records in support of her allegation that ALJ Kennedy is biased against Plaintiff and claimants like

Plaintiff. Defendant disputes the submission of these materials as outside the scope of permissible evidence in 42 U.S.C. § 405(g) and moves to strike Plaintiff's declaration. ECF No. 21. Because these materials are outside the scope of the administrative record, the Court finds these materials are not proper for consideration and grants Plaintiff's motion to strike.

42 U.S.C. § 405 governs the judicial review of SSA benefits decisions. The statute limits a federal court's review to "the pleadings and a transcript of the record." *Id.* Sentence Six of 42 U.S.C. § 405(g) provides that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

Here, Plaintiff's proffered evidence is not part of the administrative record. Plaintiff asserts that she submitted this evidence to the Appeals Council, but that the council did not accept the evidence. ECF No. 15 at 18. If materials that were not before the ALJ are presented to the Appeals Council, the Council must consider them only if they are "new and material." 20 C.F.R. § 404.970(b), 416.1470(b). Unlike the medical evidence at issue in *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011) the evidence submitted here does not appear to be "new and material" as defined by § 404.970. Moreover, "in rejecting [new]

evidence, the Appeals Council is not required to make any particular evidentiary finding." *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996) *superseded by regulation on other grounds as stated in Boyd v. Colvin*, 524 F. App'x 334 (9th Cir. 2013). Plaintiff does not argue that the evidence should be considered on remand under Sentence Six of 42 U.S.C. § 405. Accordingly, the Court will not consider the materials and will grant Defendant's motion to strike.

Accordingly, **IT IS HEREBY ORDERED**:

**1.** Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

**2.** Defendant's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

**3.** Defendant's Motion to Strike the Declaration of Becky Lieferman, **ECF No. 21**, is **GRANTED**.

**4.** The case is **REMANDED** to the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this order.

**5.** **JUDGMENT** is to be entered in Plaintiff's favor.

**6.** The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

DATED this 19th day of September, 2017.

SALVADOR MENDOZA, JR.
United States District Judge

SUMMARY JUDGMENT
ORDER - 24